COALTRR, Judge.
I am of opinion that the release executed by William Kile was not sufficient to restore his competency as a witness.
The intestate, Fanny Kile, died possessed of other personal estate than the paper on which this action is founded, and in which the witness is interested. Should the administrator be cast in this suit, that estate would be answerable for the costs; and of course, the interest of the witness therein be so far diminished. If Fanny Kile owed debts, which might be paid by the monej' Recovered in this suit, in the event of such recovery, or which would be chargeable on the other estate, in case of failure, and concerning the existence of such debts, it is impossible now for either him or us to determine, his interest would be more largely affected. So too, if she left real estate, which might be exonerated from debts, otherwise chargeable upon it by a recovery in this case. It is enough though that the witness is interested, as aforesaid, in the personal estate, and that his release extends only to a part thereof, in order to exclude him. His testimony, therefore, was improperly received.
As to the second point in the bill of exceptions. The testimony in it went to establish the forgery of the paper in question, on Richard Rowt another distributee. If this paper was in existence in the lifetime of Fanny Kile, the intestate, and j came, with the other jiapers, into the hands of the administrator, Richard Kile would have had no interest in the alleged forgery, at the time it must have taken place, other than the remote possibility of his claim as one of her distributees. Nevertheless, he may have forged this paper, as any other person, having the capacity to do so, may have done. But the mere fact, that a person having such capacity was in the neigh-bourhood, and intimate or connected with the intestate, I incline to think, would not be proper evidence, unless there was some proof as to his agency in the execution of the paper itself.
In 1 Peake, 68, it is said, that where it was alleged, that the paper produced, was the forgery of a third person, evidence that such third person had forged the defendant’s signature to instruments of a similar nature, was held not to be admissible; and this, as I understand, on the ground, that the plaintiff could not be prepared to support the authority of other deeds. In this case, not only the capacity to do so, but the actual forgery of other similar papers, was offered to be proved.
*In the case before us, the ability to imitate the hand writing is attempted to be proved, and instead of the actual forgery of other papers, the general character of this person is offered in evidence, in order to shew, from his moral turpitude that he might be guilty of such act. Surely this must be evidence inferior to that rejected in the above case.
If the plaintiff had known such evidence would be offered, he might have disproved even the capacity of Richard Rowt to imitate the hand-writing, and might also have rebutted the evidence as to his character: and though if a party introduce a witness he must be ready to support his credit, yet he cannot be supposed prepared to support *892 the character or transactions of a person brought before the court by his antagonist, unless indeed the agency of that person in the matter in controversy is made out, so as to connect him therewith, in which case he must be' ready to explain every thing touching that transaction.
But the other evidence, not set out in the bill of exceptions, may have tended to prove an agency in Richard Rowt in the execution of the paper in question, and thereby have legalized the evidence touching his capacity to imitate the hand-writing of the intestate John Rowt; and if so, I can see no good reason against an 'inquiry into his general character. Surely the plaintiff might have proved the fairness of his -character on the one side, and I can therefore see no reason why its foulness might not be relied on as a circumstance on the other. As the first branch of the evidence was not objected to by the plaintiff, we must at present, perhaps, take it to be legally received, and that consequently the other part was'improperly rejected. It may however have happened in this case, as it frequently does, that in the hurry of a trial, improper evidence has been received, which the party on a subsequent trial may object to; and as the bill of exceptions may *be, and probably is defective, in not setting out the import of the other evidence introductory of that in controversy, so as to enable this court to say whether the whole testimony in regard to Richard Rowt was not improper; for if it was, an objection to any part of it ought to have been sustained, and as the case must go back for a new trial, I do not wish a conclusion to be drawn, that a mere capacity in a third person to forge the hand-writing of the alleged obligor, even admitting that person to be a notorious forger, or person of bad fame, is proper evidence, unless his agency in producing the paper in dispute, can in some way be brought home to him. All papers executed in the neighbourhood of such a person might, in this way be thrown under a cloud.
As to the interest, the verdict and judgment must be taken as giving six per cent.; a less rate not being fixed. In this, I think, there was no error.
The sealed instrument which recognises a debt then due, partly for services rendered befpre the change of the rate of interest, and partly after, merged the simple contract, whether expressed or implied, which existed before the execution of that instrument: it acknowledged a debt thbn due for past services. The contract to be enforced is not that which existed before the sealed instrument, but that which arises out of it. The plaintiff could not resort back to the original simple contract, so as to sue upon it, and get interest, if allowed by the Jury. The principal alone is acknowledged to be due, and the party accepts that deed in discharge of the prior contract. It is like a new bond taken before the change of the rate of interest, after such change, and for a further forbearance, of which the party may then take six per cent.
As to the month of November being included in the computation, if this was clearly wrong, and the only error, I should be sorry to reverse this judgment for this matter of $5, on an objection first taken here, when, had *it been insisted on in the court below, it might have been yielded, or released on a motion for a new trial. But the writing acknowledges a debt due for services rendered at the rate of $60 per year, from the year 1773, in November; whether the first or last, or any intermediate day is not stated, the Jury took it to be the first, and they may be correct.
The judgment I think ought therefore to be reversed, and the case remanded with instructions to the court below, to reject the testimony of William Rowt; and to receive or reject that in relation to William Rowt, as shall appear consonant to the principles which I have above stated in regard to it.